UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20499-CIV-SEITZ/SIMONTON

RICARDO FIGUEROA,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA, *et al.*,

    Defendants.
_____/

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [DE-48]. Plaintiff's five count Complaint alleges claims for: (1) state law false arrest against Miami-Dade County; (2) a 42 U.S.C. § 1983 violation of Plaintiff's Fourth Amendment rights against Officer Jose Huerta for false arrest; (3) a 42 U.S.C. § 1983 violation of Plaintiff's Fifth Amendment rights by Officer Jose Huerta for use of excessive force; (4) malicious prosecution against Officer Jose Huerta; and (5) a 42 U.S.C. § 1983 violation by initiation and pursuit of prosecution without probable cause against Officer Jose Huerta.

Defendants move for summary judgment on the § 1983 claims based on qualified immunity and on the state law claims because the existence of probable cause to arrest defeats claims for false arrest and malicious prosecution. However, taking the evidence in the light most favorable to Plaintiff, Officer Huerta did not have arguable probable cause to arrest Plaintiff. Consequently, the motion is denied as to Counts I, against Miami-Dade County, and II, against Officer Huerta. While there was not arguable probable cause, the motion is granted as to the malicious prosecution claims, Counts IV and V, because there is no evidence that Officer Huerta was involved in the decision to

prosecute Plaintiff. The motion is granted as to Count III, use of excessive force, because Officer Huerta is entitled to qualified immunity on this claim.

## I. Undisputed Material Facts

Plaintiff is a veteran of the United States Army. (Compl. ¶15.) Plaintiff was discharged from the Army following an arrest for cocaine use (Pl. Dep.[1] 19:7-20:20.) Plaintiff's initial discharge from the Army was an "other than honorable" discharge. (*Id.* at 20:18-20.) On August 10, 2006, Plaintiff's discharge was upgraded to "General, Under Honorable Conditions." (*Id.*; DE-49-2.)

Plaintiff possessed a railpass known as the "Patriot Passport" (Patriot Pass). (Compl. ¶15.) A Patriot Pass allows a person to ride public transportation in Miami-Dade County for free. (DE-49-3.) A person is eligible to obtain a Patriot Pass if he or she is a low income veteran, is a resident of Miami-Dade County, and has been honorably discharged. (*Id.*) In order to obtain a Patriot Pass, a person must supply, among other things, proof of an honorable discharge. (DE-49-4.) Plaintiff provided a copy of his DD1010, which is his application for Veterans Medical Benefits. (DE-53-2.) Under the box that states "Discharge Type" the word "Honorable" has been filled in on the DD1010. (*Id.*) The current Patriot Pass application requires the applicant to declare that the facts stated in it are true, under penalty of perjury. (DE-49-5.) Plaintiff obtained a Patriot Pass in 2005. (Pl. Dep. 86:8-10.) On its face, Plaintiff's Patriot Pass stated that it expired on June 30, 2007. (DE-49-9.)

On September 20, 2007, Officer Jose Huerta (Huerta) of the Miami-Dade Police Department was assigned a special detail by the Police Operations Bureau at the Metrorail Station at the Stephen P. Clark Center, also known as the Government Center. (Huerta Stmt.[2] 4:22-5:1.) The detail

---

[1] Pl. Dep. refers to Plaintiff's deposition filed at DE-49-1.

[2] Huerta Stmt. refers to the sworn statement of Huerta filed at DE-49-6.

included fare evasion. (*Id.* at 5:2-4.) It was an overtime assignment for Huerta. (*Id.* at 5:14-17.) At the time he was working the detail, Huerta understood that passengers could use tokens or a magnetic card to turn the turnstile and gain access to the Metrorail platform. (Huerta Stmt. 7:19-8:4.) At the time, Huerta was not aware of the different type of passes that had the magnetic strips on them. (*Id.* at 8:5-12.)

Prior to September 20, 2007, Plaintiff had informed transit authorities that the magnetic strip on his Patriot Pass was not properly functioning. (Pl. Dec.[3] at ¶8.) Transit authorities instructed Plaintiff to enter the platform through the handicapped gate while displaying the Patriot Pass in his hand (*Id.* at ¶10.) On September 20, 2007, Plaintiff entered the Metrorail platform at the Government Center by walking through the handicapped gate and carrying his Patriot Pass in his hand. On September 20, 2007, there was no one stationed at the handicapped gate to whom Plaintiff could display his Patriot Pass.

Huerta and his partner, Officer Regina Brown were dressed in plainclothes on September 20, 2007 and their police shields were under their clothes. That day, Huerta observed Plaintiff walk through the handicapped entrance without attempting to pay the fare. (Huerta Stmt at 11:5-11:23.) After Plaintiff walked through the handicapped entrance, Huerta grabbed Plaintiff's arm, spun him around, and then grabbed his chest through his jersey. (Pl. Dep. 110:17-111:15.) Huerta then said to Plaintiff, "I got you." (*Id.* at 112:20-23.) Plaintiff told Huerta "What are you doing? Let go. What are you doing? Let go." (*Id.* at 112:24-113:2.) Officer Brown heard the verbal altercation between Huerta and Plaintiff and approached them and spoke on the radio. (*Id.* at 115:1-4.) Officer

---

[3]Pl. Dec. refers to the Plaintiff's Declaration filed at DE-53-1.

Brown asked Huerta what was going on. (*Id.*) Huerta let go of Plaintiff. Plaintiff handed Huerta his Patriot Pass. (*Id.* at 116:23-117:5.)

Huerta walked back towards Plaintiff to arrest him and as he attempted to grab Plaintiff both men fell to the ground. (*Id.* at 188:1-6; Heurta Dec at ¶19.) Huerta says he lost his balance, while Plaintiff alleges that Huerta used his leg to sweep Plaintiff's feet out from under him. Plaintiff landed on top of Huerta. (Pl. Dep at 120:23-121:2.) Huerta put his arm across Plaintiff, which Plaintiff believes was an attempt to put a choke hold on him. (*Id.* at 121:1-23.) A Wackenhut security guard approached and helped Huerta handcuff Plaintiff. (*Id.* at 123:16-23.) Huerta then picked Plaintiff up from the ground and took him to a patrol car waiting outside the building.

Officer Brown and Huerta discussed the Patriot Pass and Officer Brown told Huerta that she believed that Plaintiff's Patriot Pass was valid. (Brown Dep.[4] 23:23:11-16.) While Plaintiff was in the patrol car, a sergeant approached and Plaintiff told the sergeant to check out his Patriot Pass. (Pl. Dep. at 126:3-5.) Huerta never attempted to verify Plaintiff's Patriot Pass. (Huerta Dec. at ¶23.)

Plaintiff was taken to jail and charged with petit theft and resisting arrest without violence. He was released from jail the next day, September 21, 2007 at 10:15 a.m. At no time did Plaintiff complain that he was injured. On October 4, 2007, an information was filed charging Plaintiff with petit theft and resisting arrest without violence. On February 4, 2008, the case went to trial and the charge of petit theft was dismissed and Plaintiff was found not guilty of resisting arrest without violence.

Plaintiff filed a complaint with the Professional Compliance Bureau against Huerta and an investigation was conducted. (DE-53-3 through DE-53-5.) The investigation concluded, among

---

[4]Brown Dep. refers to the deposition of Officer Brown filed at DE-49-8.

other things, that Miami-Dade Transit had signs posted in the Metrorail stations which read "Attention: Patriot Passport Patrons, Patriot Passports bearing the expiration date of June 30, 2007, have been extended to November 30, 2007. Additional details will be forthcoming as they become available." (DE-53-4 at 14.)

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the

5

jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

### A. Qualified Immunity

Defendant Huerta seeks summary judgment on Plaintiff's § 1983 claims based on qualified immunity. Huerta argues that he had probable cause to arrest Plaintiff, which would entitle him to qualified immunity on the § 1983 claims for false arrest and malicious prosecution. He further argues that he did not use excessive force, which would entitle him to summary judgment on the § 1983 excessive force claim.

Qualified immunity offers government officials sued in their individual capacity complete protection as long as their conduct violates no clearly established law of which a reasonable person would have known. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012). A court must grant qualified immunity unless the facts taken in the light most favorable to Plaintiff show: (1) that there was a violation of the Constitution and (2) that the illegality of Huerta's actions was clearly established at the time of the incident. *See id.* In other words, once an official proves that he was acting within his discretionary authority, the burden shifts to the plaintiff to prove that the official's acts violated clearly established law of which a reasonable person would have known. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000). In this matter, Plaintiff does not dispute that Huerta was acting within his discretionary authority when he arrested Plaintiff. Thus, Plaintiff has the burden of demonstrating that Huerta violated clearly established law.

Plaintiff argues that qualified immunity does not apply to an officer working an off-duty overtime detail. Regardless of whether that is true, the evidence indicates that Huerta, while working

over-time, was not working off-duty. There is nothing in the record to support Plaintiff's assertion that Huerta was off-duty at the time of Plaintiff's arrest. Consequently, this argument fails and the Court must determine whether Huerta is entitled to qualified immunity under the circumstances of this case.

### i. Officer Huerta is Not Entitled to Qualified Immunity on the False Arrest Claim

Huerta argues that he is entitled to qualify immunity on the false arrest and malicious prosecution claims because he had probable cause to arrest or reasonably believed that he had probable cause to arrest Plaintiff. Thus, the relevant information is that which was known to Huerta at the time of Plaintiff's arrest, not the facts known to Plaintiff then or those known to a court later. *See Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999). Based on this standard, Huerta asserts that when he arrested Plaintiff he had arguable probable cause because he saw Plaintiff enter the Metrorail station without paying the fare, Huerta was unfamiliar with the Patriot Pass, the Patriot Pass appeared to be expired, Plaintiff did not inform Huerta of the significance of a Patriot Pass, and Huerta did not personally verify Plaintiff's Patriot Pass.[5]

In response, Plaintiff, citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir. 2004), asserts that an officer cannot ignore exculpatory information that is available to him. Plaintiff argues that Huerta ignored Plaintiff's Patriot Pass and he chose not to check its validity, even after Officer Brown told Huerta that she believed it to be valid. Thus, according to Plaintiff, Huerta

---

[5]Huerta further argues that he should maintain his qualified immunity because it turns out that Plaintiff was not entitled to a Patriot Pass. However, given that the Court must consider the information that Huerta possessed at the time of Plaintiff's arrest, this information is irrelevant for purposes of a qualified immunity analysis.

ignored information offered to him and chose not to obtain easily discoverable facts. Consequently, arguable probable cause did not exist to arrest Plaintiff.

Based on the circumstances at the time of Plaintiff's arrest, Huerta did not have arguable probable cause to arrest Plaintiff. While Huerta did observe Plaintiff enter the Metrorail station without paying, Officer Brown informed Huerta that she believed that the pass was valid. Instead of taking further steps to determine if the pass was valid, Huerta arrested Plaintiff; thereby ignoring potentially exculpatory information. After being told that the pass was valid by a fellow officer, a reasonable officer with that knowledge would not have arguable probable cause to arrest Plaintiff. *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (stating that "because the *totality* of the circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause. An officer contemplating arrest is not free to disregard plainly exculpatory evidence")

Huerta asserts that Plaintiff's Patriot Pass was invalid because it was obtained under fraudulent circumstances because Plaintiff was not honorably discharged from the Army. However, the qualified immunity analysis should be based on the relevant information which was known to Huerta at the time of Plaintiff's arrest. At the time of his arrest, despite the expiration date on Plaintiff's Patriot Pass, Huerta had reasons to believe that Plaintiff's Patriot Pass was valid. In fact, based on the statement from Officer Brown and the signs in the Metrorail station, a reasonable officer would have every reason to believe that Plaintiff's Patriot Pass was valid. Thus, based on the circumstances at the time of the arrest and taking the evidence in the light most favorable to Plaintiff, Huerta did not have arguable probable cause to arrest Plaintiff for fare evasion. Consequently, Huerta is not entitled to qualified immunity for false arrest. Because Huerta did not have arguable

probable cause to arrest Plaintiff, the motion for summary judgment is denied as to Count I, the false arrest claim against Miami-Dade County, and as to Count II, the § 1983 false arrest claim against Huerta.

### ii. *Officer Huerta is Entitled to Qualified Immunity on the Excessive Force Claim*

Huerta moves for summary judgment on the claim of excessive force because there is no evidence to show that Huerta used more than *de minimis* force incident to arrest; thus, Huerta is entitled to qualified immunity as to this claim. Plaintiff has not directly addressed this argument. The burden is on Plaintiff to show that: (1) there was a violation of the Constitution and (2) the illegality of Huerta's actions was clearly established at the time of the incident. Plaintiff has not done this. Plaintiff has not shown that the force used by Huerta during Plaintiff's arrest was excessive under the Constitution or established law at the time. Consequently, Plaintiff has not met his burden to overcome Huerta's claim of qualified immunity. Accordingly, Huerta is entitled to qualified immunity as to the claim of excessive force and summary judgment is appropriate.

### B. Huerta is Entitled to Summary Judgment on Both Claims of Malicious Prosecution

Officer Huerta also seeks summary judgment on the malicious prosecution claims because Plaintiff cannot establish the elements of such a claim. To establish a § 1983 claim for malicious prosecution a plaintiff must prove the elements of the common law tort of malicious prosecution and a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland*, 382 F.3d at 1234. Under Florida law, to establish a claim of malicious prosecution, a plaintiff mst prove: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present

plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." *Id.* Huerta argues that Plaintiff cannot establish that Huerta was the legal cause of the proceeding or that Huerta acted with malice.

There is no evidence in the record that indicates that Huerta was involved in the State Attorney's office's decision to prosecute Plaintiff. In fact, there is no evidence at all about the State Attorney's decision to prosecute. If a defendant is not involved in the decision of whether or not to prosecute a party, such a defendant is not a proper target of a malicious prosecution claim. *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994). Plaintiff asserts that Huerta does not have to be actively involved in the decision to prosecute, as long as he was responsible for the commencement of the original criminal proceedings. However, Plaintiff has offered no authority in support of this proposition. Consequently, Defendant is entitled to summary judgment on both the § 1983 malicious prosecution claim and the state law malicious prosecution claim.

Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment [DE-48] is GRANTED IN PART AND DENIED IN PART:

1. The Motion for Summary Judgment is DENIED as to Counts I and II.

2. The Motion for Summary Judgment is GRANTED as to Counts III, IV, and V.

DONE and ORDERED in Miami, Florida, this 6th day of June, 2012.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record